Jоhn A. Worsley *vs.* Anthony Corcelli, Jr. *et al.*

AUGUST 25, 1977.

Present: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. This is a civil action for personal injuries resulting from a rear-end motor vehicle accident. The case was heard before a justice of the Superior Court sitting without a jury and resulted in a verdict for the plaintiff in the amount of $2,300. The case is before us on the plaintiff's appeal from a judgment denying his motion for an additur or for a new trial on the question of damages only.

The facts pertinent to the issues raised by this appeal are in substance as follows. The plaintiff was injured when the automobile he was driving was struck in the rear by another vehicle. The accident occurred on May 31, 1969 while plaintiff was stopped at a traffic light. The automobile owned by defendant, Anthony Corcelli, Jr., and operated by defendant, Dorothy N. Stevens (now Dorothy N. Corcelli) struck the rear of a vehicle which was stopped behind plaintiff's vehicle.[1] The force of the collision propelled the struck vehicle into plaintiff's, thereby injuring him.

At the time of the accident, plaintiff was preparing for a summer recess from his position as an assistant professor of history at Worcester Polytechnical Institute in Worcester, Massachusetts. During the summer recess he was scheduled to teach a two-week course at Clark University in Worcester and to play the piano at Skipper's Restaurant on Cape Cod.

The plaintiff further testified that as a result of the injury, he was afraid to drive an automobile and had to be driven to Worcester by someone else to fulfill his teaching commitment at Clark University. He also stated that he was unable to work at Skipper's Restaurant during the summer of 1969 and as a result suffered a loss of wages.

---

[1] Ms. Stevens was married to Mr. Corcelli shortly after the accident.

As previously stated, the case was heard in the Superior Court before a justice of that court sitting with a jury. Liability was admitted to the jury, and the only question they were to consider was that of damages.

Four doctors testified as to the extent of the plaintiff's injuries. These included a neurologist, an orthopedic surgeon, a psychiatrist, and a neurosurgeon. The substance of their testimony was that plaintiff was suffering from a cervical strain and anxiety neurosis.

Counsel for plaintiff wanted to use a blackboard in his closing argument to propose various mathematical methods the jury might use to determine the amount of damages for pain and suffering. He explained the nature of his proposed argument to the trial justice out of the presence of the jury. The proposed argument consisted of four different mathematical methods which the jury might consider in evaluating damages for pain and suffering.

One of the methods would have been to suggest that the value of the entire case be determined by multiplying the entire out-of-pocket expenses by some figure such as three or four. Another was to use plaintiff's annual salary as a standard for compensation. The third suggestion was to set a dollar value for pain and suffering on a per diem basis. The last suggestion was to argue that the jury might determine the value of the entire case by awarding a percentage of the ad damnum, such as 10 percent.

The counsel for defendants objected to the use of these arguments; his objection was sustained and the arguments were not made. In sustaining the objection, the trial justice said that such arguments were not based on the evidence and might have a prejudicial effect on the jury.

The plaintiff's medical bills were $978 and he claimed lost wages of $1,500 for a toal of $2,478 without consideration of pain and suffering. The jury returned a verdict for plaintiff in the amount of $2,300.

Thereafter, plaintiff filed a motion for an additur or, in the alternative, a new trial solely on the issue of damages. In denying plaintiff's motion, the trial justice indicated a belief that the jury restricted itself to testimony relating to the cervical strain and disregarded testimony relating to anxiety neurosis. He held that the jury was warranted in returning such a small verdict because plaintiff failed to prove his case by a fair preponderance of the evidence. From the judgment entered pursuant to the trial justice's decision, plaintiff filed the instant appeal which he has briefed and argued under two main points.

In the first he argued that the trial justice erred in denying plaintiff's counsel the opportunity to argue to the jury in closing argument with the aid of a blackboard various methods of calculating damages for pain and suffering. Under his second point plaintiff contended that the trial justice erred in denying plaintiff's motion for an additur or in the alternative a new trial solely on the question of damages.

We consider initially the question of whether the trial justice erred in denying plaintiff's counsel the opportunity to argue to the jury in closing argument with the aid of a blackboard suggested methods of calculating damages for pain and suffering.

As we have previously stated, counsel for plaintiff wanted to use a blackboard in his closing statement to illustrate possible methods of determining the value of pain and suffering. Counsel explained the nature of his proposed argument to the court out of the presence of the jury. The trial justice sustained defendants' objection to the use of the proposed argument.

Had the argument been permitted, counsel would have informed the jury that the suggestions were merely guidelines that they might use and that they were not bound by them in any way.

The proposed argument, as we have previously stated, consisted of four different suggested methods for evaluating damages for pain and suffering. For convenience we repeat them here. The first suggested method was to list the amount of plaintiff's medical bills and lost wages on the blackboard with a suggestion that the jury might apply a multiple such as three or four to determine the value of the entire case.

The second method proposed by counsel was to suggest that the jury use plaintiff's annual salary at the time of the injury as a standard for compensation. For example, if plaintiff earned $10,000 a year in good health, perhaps a year of pain and suffering might be measured by the same amount.[2]

The third suggested method was to illustrate pain and suffering on a per diem basis. For example, considering that there were 6 months of active medical care, the jury might conclude that there were likewise 6 months of pain and suffering. There are approximately 182 days in 6 months. Thus the jury might decide a dollar value for one day of pain and suffering and then multiply it by 182 to determine the total value of pain and suffering.

The fourth proposal was to suggest that the jury might consider the ad damnum of the case and determine the value of the entire case by taking a percentage of the ad damnum, such as 10 percent.

In denying the use of the proposed argument, the trial justice stated that he had no objection to the use of a blackboard to indicate various items of expense and loss of earnings if they had a basis in the evidence. He concluded, however, that counsel's proposed guidelines had no such basis in the evidence. In so deciding, he followed the reason-

---

[2]The plaintiff cites *Bowers* v. *Pennsylvania R.R.*, 281 F.2d 953 (3d Cir. 1960), where the Third Circuit Court of Appeals upheld the use of the plaintiff's wage rate to suggest a proper method for computing the value of pain and suffering.

ing of the court in *Botta* v. *Brunner*, 26 N.J. 82, 138 A.2d 713 (1958), where the court held that counsel was not allowed to argue to the jury his belief regarding a pecuniary value for pain and suffering on a weekly, daily or hourly basis. Such a figure, the New Jersey court held, could not be offered by counsel as part of a mathematical formula. One of the main objections the trial justice in the case at bar cited for denying the use of the proposed argument was the possibility of prejudice that might accompany it. Agreeing with the court in *Botta*, the trial justice stated that counsel's proposed argument might instill impressions in the minds of the jury not founded upon the evidence. He added that the proposed argument might get figures and amounts to the jury which would give them a basis not established by the evidence on which to determine their award. With respect to plaintiff-counsel's statement that he would have informed the jury that they were not bound by his suggestions, the trial justice said that this might have merely softened the effect of the argument and that the warning might not have enitrely overcome the prejudice that the argument might produce.

As we have stated in prior decisions of this court, no particular formula or rule of thumb is available either to a jury or to this court for computing the damages which are due to a plaintiff for pain and suffering. The establishment of the amount to be awarded for pain and suffering has always been left to the discretion of the jury with proper instructions from the trial justice. *Yetner* v. *Remington Coal & Lumber Co.*, 113 R.I. 84, 317 A.2d 883 (1974); *Wood* v. *Paolino*, 112 R.I. 753, 759, 315 A.2d 744, 747 (1974);*Young* v. *Coca-Cola Bottling Co.*, 109 R.I. 458, 287 A.2d 345 (1972); *Simmons* v. *United Transit Co.*, 99 R.I. 460, 208 A.2d 537 (1965); *DelVecchio* v. *O'Leary*, 97 R.I. 329, 197 A.2d 759 (1964); *Calci* v. *Brown*, 95 R.I. 216, 186 A.2d 234 (1962); *Tilley* v. *Mather*, 84 R.I. 499, 124 A.2d 872 (1956).

The question raised by the argument proposed by counsel for plaintiff presents a novel question for this court.

However, the question has been considered and decided in other jurisdictions. There is a sharp division among the courts which have considered the propriety of using a mathematical formula for calculating damages for pain and suffering. In addition to *Botta,* the following cases are usually cited as authority for disallowance of the mathematical formula argument: *Redepenning* v. *Dore,* 56 Wis.2d 129, 201 N.W.2d 580 (1972); *McCormick* v. *Smith,* 459 S.W.2d 272 (Mo. 1970); *Paley* v. *Brust,* 21 App. Div.2d 758, 250 N.Y.S.2d 356 (1964); *Ruby* v. *Casello,* 204 Pa. Super. Ct. 9, 201 A.2d 219 (1964); *Jensen* v. *Elgin, Joliet & Eastern Ry.,* 24 Ill.2d 383, 182 N.E.2d 211, 94 A.L.R.2d 904 (1962); *Caylor* v. *Atchison, Topeka & Santa Fe Ry.,* 190 Kan. 261, 374 P.2d 53 (1962); *Duguay* v. *Gelinas,* 104 N.H. 182, 182 A.2d 451 (1962); *Harper* v. *Bolton,* 239 S.C. 541, 124 S.E.2d 54 (1962); *King* v. *Railway Express Agency, Inc.,* 107 N.W.2d 509 (N.D. 1961); *Crum* v. *Ward,* 146 W.Va. 421, 122 S.E.2d 18 (1961); *Cross* v. *Robert E. Lamb, Inc.,* 60 N.J. Super. 53, 158 A.2d 359, *cert. denied,* 32 N.J. 350, 160 A.2d 847 (1960); *Certified T.V. & Appliance Co.* v. *Harrington,* 201 Va. 109, 109 S.E.2d (1959); *Henne* v. *Balick,* 51 Del. 369, 146 A.2d 394 (1958).

In the following instances the rule in *Botta* has not been followed, and this type of argument has been permitted by either judicial decision or statute: *Baron Tube Co.* v. *Transport Ins. Co.,* 365 F.2d 858 (5th Cir. 1966); *Meissner* v. *Smith,* 94 Idaho P.2d 567 (1972); *Barretto* v. *Akau,* 51 Hawaii 383, 463 P.2d 917 (1969; *Beaulieu* v. *Elliot,* 434 P.2d 665 (Alas. 1967); *Myers* v. *Rollette,* 6 Ariz. App. 43, 429 P.2d 677 (1967); *Beagle* v. *Vasold,* 65 Cal.2d 166, 417 P.2d 673, 53 Cal. Rptr. 129 (1966); *Grossnickle* v. *Village of Germantown,* 3 Ohio St.2d 96, 209 N.E.2d 442 (1965); *Vogel* v. *Fetter Livestock Co.,* 144 Mont. 127, 394 P.2d 766 (1964); *Vanlandingham* v. *Gartman,* 236 Ark, 504, 367 S.W.2d 111 (1963); *Evening Star Newspaper Co.* v. *Gray,* 179 A.2d 377 (1962); *Corkery* v. *Greenberg,* 253 Iowa 846, 114 N.W.2d 846, 114 N.W. 2d 327

(1962); (La. App. 1961); *Yates* v. *Wenk,* 363 Mich. 311, 109 N.W.2d 828 (1961); *Louisville & Nashville R.I.* v. *Mattingly,* 339 S.W.2d 155 (Ky, 1960); *Olsen* v. *Preferred Risk Mut. Ins. Co.,* 11 Utah 2d 23, 354 P.2d 153 (1960); *Ratner* v. *Arrington,* 111 So.2d 82 (Fla. App. 1959); *Johnson* v. *Brown,* 75 Nev. 437, 345 P.2d 754 (1959); *Continental Bus Sys. Inc.* v. *Toombs,* 324 S.W.2d 153 (Tex. Civ. App. 1959); *McLaney* v. *Turner,* 267 Ala. 588, 104 So.2d 315 (1958); *Flaherty* v. *Minneapolis & St. Louis Ry.,* 251 Minn. 345, 87 N.W.2d 633 (1958); *Arnold* v. *Ellis,* 231 Miss. 757, 97 So.2d 744 (1957); *Ga. Code Ann.* §81-1015; *Tenn. Code Ann.* §20-1327.

After carefully considering the adversary arguments of counsel and the reasoning of those courts which have considered and passed upon the propriety, or nonpropriety, of using a mathematical formula for calculating damages for pain and suffering, we are persuaded by the reasoning of those courts which allow the use of the third method proposed by counsel for plaintiff, namely, the so-called per diem method. As the court said in *Corkery* v. *Greenberg, supra,* at 854-55, 114 N.W.2d at 332:

> "The task presented to the jury is to determine the amount in dollars and cents to be awarded for pain and suffering and future disability. * * * The task of the lawyer is to assist the jury in reaching a verdict. In doing this a suggestion of the manner in which the lawyer reached the amount asked without more cannot invade the province of the jury. The jury must reach their verdict by reasoning and drawing inferences. The per diem argument is nothing more than a suggestion of a course of reasoning from the evidence of pain and disability to the award."

With due regard for all the reasons advanced against the use of this method, we believe that the use of the per diem method, under proper instructions by the trial justice and other safeguards available to the trial justice to prevent any

prejudicial effect from such argument, would aid the jury in performing their duty in evaluating damages for pain and suffering solely on the basis of the evidence before them. In permitting the use of this method, the trial justice should inform the jury in his own instructions that the suggestions made by counsel during summation are not binding.

We are satisfied that there are sufficient safeguards to prevent any prejudicial effect from the use of the per diem method. Some of the courts which have allowed the use of this method have pointed out the following safeguards: that the judge can and should inform the jury in his own instructions that the suggestions made by counsel during summation are not binding; that counsel for the defendant has the opportunity to rebut the argument, to argue that the suggested amounts are excessive, and to make his own suggestions; that argument of counsel is often discounted as "Lawyers' Talk" and not taken literally by the jury; that counsel assumes the risk of overpersuasion, of having his entire argument dismissed as outrageous by the jury and ridiculed by opposing counsel, if he carries his calculations to an absurd extreme; and that the jury has sufficient mentality to distinguish between argument and evidence. See *Yates* v. *Wenk; Evening Star Newspaper Co.* v. *Gray; Beagle* v. *Vasold;* and *Grossnickle* v. *Village of Germantown,* all *supra.*

In addition, as pointed out by plaintiff, the final safeguard which exists is the trial justice's power to disregard the award if it shocks the conscience or clearly demonstrates that the jury was influenced by passion or prejudice, or that it proceeded upon a clearly erroneous basis in arriving at its award, *Wood* v. *Paolino, supra; Ruggieri* v. *Beauregard,* 110 R.I. 197, 291 A.2d 413 (1972); *Raiff* v. *Yellow Cab Co.,* 93 R.I. 474, 176 A.2d 718 (1962); *Broccoli* v. *Krzyston,* 87 R.I. 41, 137 A.2d 740 (1958); *McGowan* v. *Interstate Consol. St. Ry.,* 20 R.I. 264, 38 A. 497 (1897).

As previously stated, this court has never passed upon the propriety of the use, or nonuse, of the per diem argument prior to the case at bar. Today we adopt the rule which permits counsel for the plaintiff, if he or she chooses, to use in summation to the jury the per diem method under proper instructions from the trial justice. In accordance with our past practices, the rule adopted here is applicable to the case at bar and to the trial of all cases occurring 60 days after the filing of this opinion. *Mariorenzi* v. *Joseph DiPonte, Inc.*, 114 R.I. 294, 307, 333 A.2d 127, 133 (1975); *Haddad* v. *First Nat'l Stores, Inc.*, 109 R.I. 59, 280 A.2d 93 (1971); *Rampone* v. *Wanskuck Bldgs., Inc.*, 102 R.I. 30, 227 A.2d 586 (1967). Since this conclusion requires a retrial of this case on the question of damages only, it becomes unnecessary to consider the plaintiff's contention that the trial justice erred in denying his motion for an additur or, in the alternative, a new trial solely on the issue of damages.

The plaintiff's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for a new trial solely on the question of damages.

*Lovett & Linder, Ltd., Raul L. Lovett,* for plaintiff.

*James M. Shannahan,* for defendants.